Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3598 | **DATE** | 3/14/2001 |
| **CASE TITLE** | US ex rel TUSHUN ROBINSON vs. PATRICIA WILSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: As none of Petitioner Robinson's claims have merit, the court denies the petition for habeas corpus.

(11) ■ [For further detail see

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 15 2001 date docketed | 19 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States ex rel. <br><br> TUSHUN ROBINSON (K154145) <br><br> Petitioner, <br><br> v. <br><br> PATRICIA WILSON,[1] Warden <br><br> Respondent. | No. 00 C 3598 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Petitioner Tushun Robinson filed this petition for habeas corpus on June 15, 2000, challenging his conviction for aggravated battery with a firearm entered on November 8, 1996 in the Circuit Court of Cook County, Illinois. Robinson's conviction was affirmed by the Illinois Appellate Court on June 30, 1999, *People v. Robinson*, No. 96 CR 4931 (unpublished opinion), and the Illinois Supreme Court denied leave to appeal on October 6, 1999. This petition is timely under 28 U.S.C. § 2244(d). Although respondent asserts that "[p]etitioner has not exhausted his state court remedies to the extent that some issues that should have been raised below were not, making them defaulted," Ans. at 4, respondent does not identify any such issues. Nor does respondent claim that any of the issues presented in this petition were not properly presented as federal constitutional claims to the Illinois courts. Accordingly, the court proceeds to the merits of the claims.

## I. FACTS

The following facts are taken from the opinion of the Illinois Appellate Court, and as they are not contested by petitioner they are accepted as true. At 2:15 p.m. on February 7, 1996,

---

[1] The original petition named Guy Pierce as respondent. The state has advised the court that Ms. Wilson is now the warden of Pinckneyville Correctional Center, and she is substituted as respondent.

Charles King, Donny Alexander and Antwan Rowry, all members of the "Four Corner Hustlers" street gang, were standing outside a housing project in Chicago. At approximately 2:30 p.m., a white van pulled up in front of the housing project. Robinson got out of the van and walked toward the group until he was about a foot away from King. Robinson was also a member of the Four Corner Hustlers, a "five-star," the highest rank in the gang. Robinson asked King, "why you rounding my building?" and pulled out a black handgun and pointed it at King's face. Robinson began manipulating the gun as if it were jammed, and then shot King in the foot. Robinson ran to the white van, entered the passenger side, and the van drove off.

When the police arrived, King was on the ground crying. There was a hole in his shoe, and his foot was injured. King was taken to a hospital, treated and released. Robinson was arrested approximately three hours after the shooting.

Assistant State's Attorney Donald Lyman interviewed witnesses and took the statements of King and Rowry. Both King and Rowry stated that Robinson exited a van with a handgun in his hand, approached King, and said to him, "didn't I tell you to stay out of my building?" King further stated that Robinson next pulled back the slide on the gun, placed a bullet in the chamber, pointed the gun at King's head and pulled the trigger, but the gun failed to fire. Robinson then worked with the gun until it fired, shooting King in the foot. Rowry's statement was similar, but omitted Robinson's shooting King in the foot.

At trial, the witnesses gave differing accounts. King testified that he was shot during a gang fight between the Four Corner Hustlers and the Travelers, and that he did not see who shot him. The State introduced King's contrary written statement. King admitted to going to the police station and giving a written statement, but testified that he only signed the statement so he could go home and rest his feet. King denied reading the statement before signing it, testifying that the Assistant State's Attorney did not let him read it. King testified, "they told

me sign those papers so I can go home." King denied that Robinson was present or was involved in the shooting.

Rowry testified that he was with King on the date of the incident. Rowry heard two shots and ran. Rowry testified that after he heard the shots, he saw a white van, and an individual wearing white pants and shirt. Rowry testified that the individual he saw was not Robinson. Again, the State introduced Rowry's prior statement to the contrary, in which he had recounted that Robinson told King, "didn't I tell you to stay out of my building?" Rowry also stated in his statement that the gun "clicked but did not shoot" at first. Rowry admitted signing the statement he gave to Assistant State's Attorney Lyman, but denied making it. Rowry testified that was allowed to read only the first paragraph of the statement, and that he initialed and signed the statement because the Assistant State's Attorney told him to initial the corrections, and then he could go to work. Rowry admitted that he went to the police station voluntarily, and that the statement stated that no threats or promises were made to him to coerce him into making the statement.

Donny Alexander also testified. At the time of trial, Alexander was in jail for contempt for refusing to appear in court and he was also on probation for a weapons conviction. Alexander testified that he was with Rowry and King, Alexander's cousin, at the time of the shooting. Alexander testified that he saw a white van pull up, and he saw Robinson exit the van. Robinson was wearing a brown jacket. Alexander testified that he saw Robinson pull out a handgun and point it to King's face, about five inches away. The pistol jammed, and Alexander ran. Alexander heard the shots, but did not see Robinson actually shoot the gun. The jury found Robinson guilty of aggravated battery with a firearm, and he was sentenced to thirty years imprisonment.

## II. ANALYSIS

Robinson raises three claims: (1) he did not receive a fair trial because evidence that he was a gang member and drug dealer was admitted without a limiting instruction; (2) he received ineffective assistance of counsel because his counsel did not request such a limiting instruction; and (3) he was denied his Sixth Amendment right of confrontation when the court permitted a police officer to testify that he had gone searching for Robinson after talking with witnesses, permitting the jury to infer the hearsay communication that the witnesses had implicated Robinson.[2]

The law of habeas corpus was significantly changed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Our review of state-court judgments requires deference to state-court factfinding and is limited to assuring compliance with "clearly established federal law":

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established Federal law, as determined by the Supreme Court of the United States" refers to holdings, as opposed to dicta, of Supreme Court decisions as of the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, ___, 146 L.Ed.2d 389, 120 S.Ct. 1495, 1523 (April 18, 2000). To prevail, a petitioner must show that the state court's decision was "contrary to" that precedent, i.e., it applied a different rule of law, or reached an opposite conclusion on indistinguishable facts, *id.*, 120 S.Ct. at 1519-20, or

---

[2] Robinson's petition reverses the order of numbers (2) and (3). We consider them in this order because (1) and (2) are logically related.

4

"involved an unreasonable application" of it, i.e., it correctly identified the governing legal rule but applied it unreasonably to the facts of the case. *Id.*, 120 S.Ct. at 1520-21.

### A. Absence of limiting instruction.

Robinson's first claim, that he received a constitutionally unfair trial because no limiting instruction was given, has been procedurally defaulted. A federal court will not review a claim raised in a petition for habeas corpus if the state courts rejected that claim on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999), *cert. denied*, 120 S.Ct. 1535, 146 L.Ed.2d 349 (March 27, 2000); *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997). If the last state court rendering a judgment "clearly and expressly" stated that it was resting its opinion on a state procedural bar, this procedural default at the state level bars consideration of a federal claim on habeas review. *Harris v. Reed*, 489 U.S. 255, 263 (1989). The Illinois Appellate Court held that this claim had been waived because Robinson's counsel failed to tender a limiting instruction and failed to object either at the jury instruction conference or at trial. *Robinson* at 8. This is an independent and adequate state law ground of decision and results in a procedural default.

Even if a claim has been procedurally defaulted, the court can reach its merits if the petitioner is able to both demonstrate cause for his procedural error and establish prejudice resulting from that error, or show that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Franklin*, 188 F.3d at 881-82; *Aliwoli*, 127 F.3d at 634. Robinson does not invoke the miscarriage of justice exception, which requires a petitioner to offer new evidence not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 316 (1995)("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach

the merits of a barred claim"). He does assert "cause" in the form of ineffective assistance of counsel.

### B. Ineffective assistance of counsel.

Attorney error rising to the level of ineffective assistance of counsel is cause to set aside a procedural default, *Franklin*, 188 F.3d at 883, bringing us to Robinson's second claim. This claim was rejected by the Illinois Appellate Court on the merits, and so the question before this court is whether its ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

The Illinois Appellate Court applied the test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and recently reaffirmed in *Williams*, 120 S.Ct. at 1511. *Strickland* was, of course, "clearly established" federal law. Under *Strickland*, to establish ineffective assistance of counsel and cause for his procedural default, a petitioner must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness under "prevailing professional norms," *Strickland*, 466 U.S. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the Appellate Court correctly recognized and articulated the applicable rule, *Robinson* at 8, we consider whether it correctly applied the rule.

In his petition and in his brief before the Illinois Appellate Court, Robinson pointed to the following testimony by King relating to Robinson's gang membership:

Q: Sir, is it true the day you got shot you knew the defendant because he was in the same gang that you were in?

A: Yes, sir.

Q: And you knew that the defendant was a five-star in the gang; is that right?

A: Yes, sir.

6

> Q: And you also knew that day that that is the highest rank that a guy can have in your gang; is that right?
>
> A: Yes, sir.

The State also elicited testimony from King on direct examination that Robinson was a drug dealer and controlled the drug trade in the building:

> Q: And you also knew that the defendant controlled the drug trade in that building; is that right?
>
> A: Yes, sir.

The Illinois Appellate Court found that this evidence was properly admissible to show Robinson's motive. The state's theory was that Robinson shot King because Robinson believed King was infringing on his drug-selling territory. Applying the *Strickland* test, the Illinois Appellate Court found that Robinson's counsel's performance had been deficient in not asking for a limiting instruction, because the Illinois Supreme Court requires the use of IPI [Illinois Pattern Instructions] 3.14 whenever evidence of other crimes or conduct is admitted. Nevertheless, the court found that Robinson had not been prejudiced, "where the reference to defendant's control of the drug trade at the building was brief, and was made only to show defendant's motive in shooting a fellow gang member." *Robinson* at 9.

The *Strickland* test has two parts, each one a "mixed" question of law and fact. It could be argued that this court should review the Illinois Appellate Court's treatment of each one independently. Nevertheless, because § 2254(d) refers to a "claim," the court sees its task as reviewing the ultimate conclusion, whether or not Robinson received ineffective assistance of counsel in the constitutional sense.

The Illinois Appellate Court conceded that the first prong of *Strickland*, substandard performance of Robinson's counsel, had been met, apparently on the theory that violation of an Illinois Supreme Court rule amounted to negligence per se. With all respect, this court doubts that

Robinson's counsel's performance fell below *Strickland*'s requirements, judged by the appropriate standard of constitutional due process.

As the question of ineffective assistance of counsel is one of federal constitutional law, compliance with state rules is probative but not dispositive. A failure to follow a state rule may or may not imply that an attorney's representation fell below "prevailing professional norms." Under *Strickland*, a petitioner must overcome a presumption that counsel's challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Franklin*, 188 F.3d at 884. Robinson's counsel could rationally have chosen not to ask for a limiting instruction. As the Seventh Circuit has observed, "lawyers often make the strategic choice not to request limiting instructions, because they wish to avoid underscoring the troublesome material for the jury." *United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998). Since it was impossible to exclude the evidence, a prudent attorney might well have decided that the fewer references to gangs and drugs, the better. The Illinois Appellate Court did not properly apply *Strickland*'s standard in giving Robinson the benefit of the doubt as to the first part of the test.

Apparently assuming that this court would not re-evaluate the ruling in Robinson's favor on the first prong of the *Strickland* test, Robinson has concentrated his efforts on the second prong, the conclusion that the failure to request a limiting instruction would not have changed the outcome. Robinson acknowledges, as he must, that evidence of his gang status and drug dealing was relevant and admissible. That evidence was central to the state's theory of the case, and without it the shooting would be wholly inexplicable. Consequently, this is not a question of whether this evidence should have been excluded, but of how much difference a limiting instruction would have made.

Robinson's argument, made with great force and many citations, that evidence of gang membership or of other criminal activity is prejudicial, is therefore largely beside the point. There is no question that evidence of gang membership and drug dealing is prejudicial, but when gang

8

members commit assaults on other gang members in the course of drug dealing, reference to both is unavoidable. This case is hardly comparable to *Old Chief v. United States*, 519 U.S. 172 (1997), cited by Robinson, in which the prosecution refused to stipulate to the existence of a prior felony conviction, an element of the charged offense, and insisted on putting the nature of the prior crime before the jury. *Spencer v. Texas*, 385 U.S. 554 (1967), cited by Robinson, recognizes that evidence of other crimes, though prejudicial, has its recognized uses, *id.* at 560-61, and while recognizing the role played by limiting instructions, *Spencer* does not hold that absence of a limiting instruction cannot be harmless.

Robinson's attempt to construct an argument from *Spencer* is transparently faulty. Robinson correctly states that *Spencer* held that there had been no due process violation when the prosecution introduced evidence, subject to a limiting instruction, of the petitioner's prior convictions in a prosecution under a recidivist statute. Robinson then states that "[i]mplicit in that holding is that absent a limiting instruction, where there is an improper admission of such evidence -- *i.e.*, when it was irrelevant [no probative value] -- it would result in violation of due process. ... Hence, the Supreme Court in *Spencer* stands for the proposition that in situations as here, due process is violated." Pet. at 5.

Robinson's argument overlooks the fact that his rank in the Four Corner Hustlers and participation in drug dealing was *not* irrelevant, but central to the case. And Robinson's first inference is faulty. Admission of irrelevant and prejudicial evidence without a limiting instruction (why should irrelevant evidence have been admitted at all?) is obviously an error, but it is elementary that not every trial error rises to the level of a due process violation. Due process is a matter of fundamental fairness and some errors are harmless; a defendant is entitled to a fair trial, not a perfect one. *Rose v. Clark*, 478 U.S. 570, 597 (1986); *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000). This returns us to the simple question: was there a reasonable probability that a limiting instruction would have made a difference?

The determination that Robinson was not prejudiced was reasonable. A limiting instruction would have told the jury that it should consider Robinson's gang status and drug business for the purpose of establishing Robinson's motive to shoot King, but not consider it for the purpose of establishing that Robinson is the kind of person likely to have committed the crime. That is a subtle distinction, and it is unlikely that such an instruction would have significantly benefitted Robinson. By telling jurors what *not* to think, it might very well have made them think it, possibly reinforcing what some jurors may believe -- that gang leaders and drug dealers are lawless, violent people. While a limiting instruction should be given when appropriate, it is not a psychic eraser. As Chief Justice Warren said in his dissent in *Spencer*, quoting Justice Jackson: "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction." *Spencer*, 385 U.S. at 575 (Warren, C.J. dissenting) (*quoting Krulewitch v. United States*, 336 U.S. 440, 453 (1949))(Jackson, J. concurring).

The effect of a limiting instruction would have been negligible, and this was not a close case. Robinson argues vigorously that his conviction was a close call because it depended on pretrial statements of King and Rowry that they disavowed on the stand. But accepting the Illinois Appellate Court's account of the evidence, as Robinson has invited the court to do, their recantations were unbelievable. The jury could readily have inferred that their recantations were motivated by second thoughts about testifying against a leader of their gang. The defense did not present a plausible alternative explanation of King's injury; King's statement on the stand that he was shot in a fight with members of a rival gang was uncorroborated by either Rowry or Alexander. There was no reasonable probability that a limiting instruction would have affected the outcome, and the Illinois Appellate Court rightly rejected this claim.

## C. Violation of Confrontation Clause.

Robinson asserts that his Sixth Amendment right to confront witnesses against him was violated when the court admitted testimony that the police went in search of Robinson after speaking with King, suggesting the obvious inference that he had incriminated Robinson. The Illinois Appellate Court recounted the challenged testimony by Officer Ford:

> Q: When you spoke with Charles King ten to fifteen minutes after the call of shots fired did you receive any information from him?
>
> A: Yes I did.
>
> [Defense Counsel]: Objection.
>
> The Court: Overruled.
>
> Q: After you received this information, Officer, were you looking for anyone?
>
> A: Yes.
>
> Q: Who were you looking for?
>
> A: We were looking for a Tushun Robinson.

*Robinson* at 15. The Illinois Appellate Court stated that this was not hearsay, as Officer Ford did not testify as to what he had been told. The court did not discuss the Confrontation Clause, but treated it as a question of the law of evidence:

> "A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest `where such testimony is necessary and important.'" *People v. Warlick*, 302 Ill. App. 3d 595, 598-99 (1998)(*quoting People v. Simms*, 143 Ill. 2d 154, 174 (1991). ... This court has held, "there is no hearsay problem when the officer merely testifies he spoke to someone or heard some unspecified words and then did something. The jury is free to reach its own conclusions." *Warlick*, 302 Ill. App. 3d at 599. Thus, Officer Ford's testimony did not constitute hearsay, and so the court properly allowed the testimony into evidence.

*Robinson* at 15-16. Robinson asserts that these Illinois decisions permitting such questioning are "constitutionally wrong," arguing that the "investigative evidence" "cover" for such evidence is "an untenable sham that must not be perpetuated." Pet. at 13.

11

Robinson's principal support for this claim is *United States v. Johnston*, 127 F.3d 380 (5th Cir. 1997), *cert. denied sub nom. Lowery v. United States*, 522 U.S. 1152 (1998), in which the Fifth Circuit sharply criticized the government's repeated use of this device to elicit testimony that non-testifying sources had implicated defendants in a drug distribution conspiracy. *Johnston* addressed the appeal of a federal conviction, not the collateral review of a state judgment. While the hearsay rule implicates the Confrontation Clause, the Fifth Circuit treated the issue as a question of admissibility under the Federal Rules of Evidence, not a violation of the Constitution. The court noted that while out-of-court statements offered as background information to explain the actions of investigators are not hearsay under Rule 803, Rule 403 requires exclusion of evidence where its probative value is substantially outweighed by the danger of unfair prejudice. The court held that accounts of investigative activity directly implicating a defendant should have been excluded. *Johnston*, 127 F.3d at 394-95.

As a decision applying federal law in the direct review of a federal conviction, *Johnston* has no direct application here. If this court were legislating rules of evidence for Illinois courts, Robinson's argument would deserve consideration, but as a habeas claim it is frivolous. First, whatever the demerits of the Illinois rule permitting this sort of questioning, there was no Confrontation Clause violation because King testified at Robinson's trial. "[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statement, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158 (1970).

Second, Robinson's argument by analogy to *Cruz v. New York*, 481 U.S. 186 (1987), and *Bruton v. United States*, 391 U.S. 123 (1968), does not meet his burden of showing that the Illinois Appellate Court's ruling was contrary to, or an unreasonable application of, clearly

12

established Supreme Court precedent.[3] *Cruz* and *Bruton* offer modest support for Robinson's claim that the Confrontation Clause is violated by inviting the inference that a non-testifying person incriminated the defendant. Nevertheless, these opinions relate to an entirely different situation, the admission of a confession by a non-testifying codefendant who is not subject to cross-examination; there is no way they can be read as having "established" the position Robinson takes. The AEDPA amendments carry the clear implication that state courts may rely on their common-law rules unless and until the United States Supreme Court tells them otherwise. It is not for lower federal courts to presume to do so.

Third, even under pre-AEDPA law this claim would be barred by the rule of *Teague v. Lane*, 489 U.S. 288 (1989), that with narrow exceptions inapplicable to lower federal courts, habeas corpus cannot be used as a vehicle to create constitutional rules of criminal procedure not dictated by existing precedent at the time a petitioner's conviction became final.

Fourth, again putting aside the limitations of AEDPA, and assuming this court could find a constitutional violation where none had been found before, there is still the question of prejudice. Robinson cannot meet the standard for evaluating trial error on habeas review adopted in *Brecht v. Abrahamson*, 507 U.S. 619 (1993): that the error "had substantial and injurious effect or influence in determining the jury's verdict." *See Miles v. Burris*, 54 F.3d 284, 287 (7th Cir. 1995)(applying *Brecht* standard to alleged Confrontation Clause violation).[4] Robinson does not explain how he was prejudiced by the inference that King had named him to Officer Ford. If the jury drew that inference, it learned nothing it did not learn from King's statement to Assistant State's Attorney Lyman. A jury will always infer that the defendant is in court because *somebody* believed he committed a crime; that is why the jury is instructed on the presumption of innocence.

---

[3] These Supreme Court opinions were not cited to the Illinois Appellate Court. The only Confrontation Clause opinion Robinson cited was *Pointer v. Texas*, 380 U.S. 400 (1965). Pet. Exh. B at 26.

[4] The Seventh Circuit has questioned whether *Brecht*'s standard of review applies after AEDPA, *Anderson v. Cowan*, 227 F.3d 893, 898 n.3 (7th Cir. 2000), but even if it did, Robinson would not meet it.

13

There is a question of prejudice only where, as in *Johnston*, the jury is told that particularly credible informants, such as police officers, are the source of suspicion.

As none of Robinson's claims have merit, the court denies the petition for habeas corpus.

SO ORDERED                                    ENTERED: 3/14/01

_____
HON. RONALD A. GUZMAN
United States Judge